

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Olin Culberson, Member
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-4262
Re: Authority of the Railroad
Commission regarding the ap-
plication of Yellow Cab Transit
Company under the facts stated.

Your request letter of December 9, 1941, and file
therewith, reflect the following facts which we shall detail
in chronological order.

On May 2, 1935, H. H. Enders was granted a certi-
ficate of convenience and necessity authorizing the operation
of an interstate motor carrier common carrier service over
certain highways in Texas. Authority to operate over the
following restricted highways was denied:

(1) Between Fort Worth and San Antonio over U.S. 81;

(2) Between Dallas and Hillsboro over U.S. 77;

(3) Between San Antonio and Orange over U.S. 90;
and

(4) Between Dallas and Gladewater over U.S. 80.

On January 24, 1936, H. H. Enders filed a "grand-
father" application with the Interstate Commerce Commission
under the Federal Motor Carrier Act. On April 10, 1936,
the Railroad Commission by due order approved the sale and
transfer of the Enders' certificate from Enders to Yellow
Cab Transit Company. After the sale to Yellow Cab opera-
tions were discontinued by Enders and operations under the
certificate were not resumed by Yellow Cab, except as later
noted, while its application before the Interstate Commerce
Commission for the approval of the purchase from Enders was
pending. Subsequently, on July 3, 1941, the purchase was

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

approved and the "grandfather" rights of Yellow Cab, successor in interest to H. H. Enders, were confirmed by the Interstate Commerce Commission and Yellow Cab was given authority to operate interstate over the Texas highways above named.

On July 28, 1941, Yellow Cab made application to the Railroad Commission of Texas for authority to operate interstate over these highways. On the 8th day of October, 1941, the Commission granted the application in part but denied the application pertaining to the highways in question. In this order the Commission made the following findings:

"THE COMMISSION FURTHER FINDS from the evidence and its records that a portion of the highways over which the proposed traffic will move is of such type of construction and in such state of repairs and maintenance as will permit the additional traffic sought to be placed thereon by the applicant without unreasonably interfering with the use of the same highways by the general public using the same for ordinary highway purposes, but that other portions of said highways are not in such condition, particularly U. S. Highway 81 from Fort Worth to San Antonio, U. S. Highway 77 from Dallas to Hillsboro, U. S. Highway 90 from San Antonio to Beaumont and U. S. Highway 80 from Dallas to Gladewater. That these highways are restricted highways under the orders of this Commission, and are already congested by the traffic moving over said highway at the present time and that these highways are already subject to such use as would not permit the use sought to be made by the applicant without unreasonable interference with the use of such highway by the general public for highways purposes. Said highways have heretofore been adjudged congested by the Commission and heretofore restricted from any additional use by commercial vehicles for hire."

In its exceptions and motion for rehearing to the order of October 8, Yellow Cab asserts that its application should be granted as a matter of law for the following reasons, among others not pertinent to your request:

(1) That the operating rights of H. H. Enders accrued in 1934 and according to the findings of the Interstate

Commerce Commission have been kept alive and have existed
since 1934 for which reason the Railroad Commission of Texas
should have considered the rights of Yellow Cab under its
application of July 28, 1941, as of 1934, and should have
recognized the priority of the right of Yellow Cab to operat-
ing rights over said highways in preference to those who
have acquired operating rights thereover subsequent to 1934;

(2)  That the granting of operating rights over
said highways to other carriers subsequent to 1934, and the
denying of operating rights over such highways to Yellow Cab,
was discriminatory and unreasonable;

(3)  That the October 8th order by the Texas Com-
mission is void in that it repudiates and attempts to nullify
the findings and order of the Interstate Commerce Commission
wherein it was found and held that Yellow Cab was entitled
to "grandfather" rights over the highways in question;

(4)  You also recite that "Yellow Cab contend that
because of the fact that for a short while they continued
their operations over such highways without let or hindrance
from the Railroad Commission that thereby the tacit consent
of the Railroad Commission of Texas was had for the use of
these highways and that thereby inured to them some character
of right under the 'Grandfather's clause'. They now assert
that the I. C. C. having granted them a permit to do inter-
state business over Highway 81 that the Railroad Commission
is estopped from confining their operations to those author-
ized in the Ender certificate to the rights of which they
succeeded."

You have requested the opinion of this department
upon the authority of the Railroad Commission to deny the
application of Yellow Cab for the reasons stated, and as
was done, in the order of October 8, 1941, in the light of
the recited contentions made by the applicant. And speci-
fically you have asked this question:

"Did the Yellow Cab Transit Company acquire
grandfather's rights by reason of their operation
without obstruction from the Commission for the
short time they pursued such operations before
voluntarily abandoning them?"

We have carefully studied the complete files sub-
mitted with your letter and have fully informed ourselves

upon the unusual and involved facts surrounding the application of Yellow Cab, its proof before the Railroad Commission, and the facts regarding the prior granting of other permits to other carriers under similar circumstances.

Without reviewing these various considerations, suffice to say that in our opinion Yellow Cab is possessed of no character of "grandfather" rights in its instant application before the Railroad Commission of Texas.

It is recognized, of course, that for the protection of the highways and the public safety, the Railroad Commission of Texas has the power to withhold permission for interstate operations upon the highways of Texas, notwithstanding any authority granted by the Interstate Commerce Commission. While the granting of a certificate of convenience and necessity by the Interstate Commerce Commission removes the question of convenience and necessity from the State Commission, the condition and ability of the highways of the State to withstand the additional traffic involved remains with the State Commission. Southwestern Greyhound Lines vs. Railroad Commission, et al, 99 S. W. (2) 263; Winton vs. Thompson, 123 S. W. (2) 951; McDonald vs. Thompson, 305 U. S. 263.

As an original matter, therefore, the Railroad Commission of Texas was not bound to grant the application of Yellow Cab over the highways in question if the granting of the application would result in unreasonable interference with the use of the highways by the public or would subject the highways to excessive burden.

We do not believe that this fundamental power of the Commission is destroyed by the considerations insisted upon in the instant application.

It is our opinion that the confirmation of "grandfather" rights by the Interstate Commerce Commission under the Federal Motor Carrier Act was subject to the power of the State Commission to withhold permission to use the highways of the State if the granting of permission would result in unreasonable interference or excessive burden.

It is our further opinion that "grandfather" rights finally established before the Interstate Commerce Commission cannot have the retroactive effect insisted upon by Yellow

Cab; in other words, the Railroad Commission of Texas cannot determine the validity of an application in 1941 by conditions existing in 1934.

Moreover, in our opinion, the proposition is untenable that because other applications have been granted over the same highways a later applicant will be discriminated against if he is not given similar operation rights; otherwise the point would never be reached at which the State Commission could exercise its police powers for the protection of the traveling public and of the highways.

The application at hand, in our opinion, is simply one addressed to the discretion of the Railroad Commission. If as a matter of fact the Commission did not act arbitrarily in denying the application over the highways involved for the reasons stated, namely, "that these highways are restricted highways under the orders of this Commission and are already congested by the traffic moving over said highways at the present time and that these highways are already subject to such use as would not permit the use sought to be made by the applicant without unreasonable interference with the use of such highways by the general public for highway purposes", the action of the Commission is valid. The converse is likewise true. This is a fact question to be considered by the Commission and to be resolved by it in the light of the facts existing under the application of Yellow Cab and otherwise properly within the knowledge of the Commission.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Assistant

APPROVED JAN 14, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

ZCS:mp

